UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **203-752-7069** | Case No. _____ <br><br> **Filed Under Seal** |

FILED

2017 APR 26  AM 9 52

U.S. DISTRICT COURT
NEW HAVEN CT.

3:17mJ 731-SALM

## AFFIDAVIT

1.      I, Michael A. Sorrentino, a Special Agent of the Bureau of Alcohol, Tobacco,

Firearms and Explosives, having been duly sworn, state:

2.      I am a Special Agent employed by the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF").  As such, I am a law enforcement officer of the United States within the

meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer empowered

by law to conduct investigations of, and make arrests for, offenses enumerated in Section 2516 of

Title 18.  I have been employed by the ATF as a Special Agent since July 2015.  I am also a federal

law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C),

that is, a government agent engaged in enforcing the criminal laws and duly authorized by the

Attorney General to request a search warrant.

3.      Prior to the ATF, I was employed by Fidelity Investments as both an Assistant

Security Manager and a Regional Background Investigator.  I am a graduate of the Criminal

Investigator Training Program and the ATF Special Agent Basic Training program, both of

which are conducted at the Federal Law Enforcement Training Center in Glynn County, Georgia.

I hold a Bachelor of Science Degree in Criminal Justice and a Minor in Psychology.

4.      I have participated in the controlled purchases of illegal narcotics and participated

in controlled purchases of firearms utilizing confidential sources and cooperating witnesses;

1

participated in the execution of search and arrest warrants pertaining to individuals involved in the illegal possession and distribution of firearms and narcotics; conducted physical surveillance of individuals involved in illegal drug distribution; provided Grand Jury testimony, and have spoken with informants and subjects, as well as law enforcement officers and agents, regarding the manner in which individuals obtain, finance, store, transport, and distribute their illegal firearms and drugs.  In addition, I have been involved in the investigation of street gangs, both gangs with a national presence and locally-based gangs.  I have received training, either formal or on-the-job, in the provisions of the federal firearms and narcotics laws administered under Titles 18, 21 and 26 of the United States Code.

5.      I am thoroughly familiar with the information contained in this affidavit.  The statements contained herein are based on: (1) my personal participation in the investigation; (2) information provided by members of the New Haven Police Department ("NHPD") and other law enforcement officers including other ATF agents and Task Force officers; (3) reliable confidential sources; and (4) my experience and training, as well other information.

**I.      Introduction and Requested Order/Warrant**

6.      I am one of the case agents in the investigation of Chris ERKERD (with a date of birth of xx/xx/1993 that is known to me) for possible violations of 21 U.S. Code § 841, namely possession with intent to distribute and distribution of heroin (the "Target Offenses").

7.      This affidavit includes only those facts, which relate to the need for, and propriety of, the requested authorization.  This affidavit does not purport to set forth all of the facts gathered during the course of the investigation of this matter.

8.      This affidavit is submitted in support of an application for an Order authorizing the installation and use of pen-register devices or processes, trap-and-trace devices or processes,

and the disclosure of certain electronic communications records and/or information, with regard to the Target Telephone (a cellular telephone, bearing the call number **203-752-7069**, with the service provider of Verizon Wireless), which is described in Attachment A.  The aforementioned information and records (hereafter "Pen Register Information") have not been requested previously.

9.      With regard to the Pen Register Information, this affidavit sets forth a) sufficient information to establish that there are reasonable grounds to believe that the information likely to be obtained by the installation and use of a pen register device or process and a trap-and-trace device or process on the Target Telephone is relevant to an ongoing investigation; and, b) sufficiently specific and articulable facts to establish that there are reasonable grounds to believe that the electronic communications records and/or information sought is relevant and material to an ongoing criminal investigation.

10.      This affidavit is also submitted in support of, and serves as, an application for a warrant pursuant to Federal Rule of Criminal Procedure 41 and Sections 18 U.S.C. 2703(c)(1)(A) and 2711(3), authorizing agents of the ATF to ascertain the physical location of the Target Telephone, as described in Attachment B, including but not limited to E-911 Phase II data or other precise location information concerning the Target Telephone (the "Location Information"), [1] for a period of thirty (30) days.

---

[1] Such information shall, where other information is unavailable, include records reflecting the tower and antenna face ("cell site") used by the Target Telephone at the start and end of any call. In requesting cell site information, the Government does not concede that such cell site records – routinely retained by wireless carriers as business records – may only be obtained via a warrant issued on probable cause. *See In re Application*, 460 F. Supp. 2d 448 (S.D.N.Y. 2006) (authorizing prospective acquisition of cell-site records under combined authority of 18 U.S.C. 2703(d) & 3121 *et seq.*).

11.     For the reasons set out in this Affidavit, the information likely to be obtained by the requested pen-trap devices and GPS is relevant to an ongoing criminal investigation being conducted by the ATF, as required by 18 U.S.C. § 3122(b)(2).  In addition, there are reasonable grounds and, indeed, probable cause, to believe that the records and information in Attachment B to the Application are relevant and material to an ongoing criminal investigation, as required by 18 U.S.C. § 2703(d).

12.     With regard to the requested Location Information, for the reasons set forth herein, there is probable cause to believe, and I do believe, that the Target Offenses have been committed, are being committed, and will continue to be committed by the user of the Target Telephone, namely Chris ERKERD.  There is, moreover, probable cause to believe that the Location Information will constitute or lead to evidence of the Target Offenses, and the eventual location and apprehension of ERKERD.

## II.     The Investigation

13.     In April of 2017, the ATF New Haven field office received information from a confidential informant (herein referred to as CI-1), that Chris ERKERD was selling narcotics. CI-1 provided ERKERD's phone number as: 203-752-7069.  CI-1 has been proven credible and reliable throughout the course of this investigation.  CI-1 has been utilized by the ATF New Haven field office to conduct numerous controlled purchases of narcotics from multiple individuals, leading to the seizure of suspected narcotics.  In addition, law enforcement has obtained a search warrant based on his/her assistance.  CI-1 is assisting ATF for monetary compensation and does not have any pending criminal charges.

14.     **On April 3, 2017**, the CI-1 was utilized to purchase approximately 3.3 grams of suspected heroin from Chris ERKERD a.k.a. "Skillz".  On that same date, CI-1 met with

members of the ATF New Haven field office and made contact with ERKERD at phone number: 203-752-7069 (the Target Telephone), regarding the purchase of heroin.  ERKERD directed CI-1 to the area of Pine Street in Hamden to complete the transaction.  CI-1 was searched and found to be free of any contraband or unaccounted for currency.  CI-1 was outfitted with an audio/video recorder and an audio transmitter then transported by members of the ATF New Haven field office to the area of Pine St.  CI-1 was surveilled as he/she walked to the meet location.  A short time later, surveillance units observed a red older model Nissan bearing New York registration HDK5515 pull up to CI-1's location. Surveillance units observed CI-1 enter the back seat of the vehicle.  According to CI-1, ERKERD was seated in the front passenger seat of the vehicle.  CI-1 handed ERKERD the $100.00 of pre-recorded ATF cashier funds and ERKERD handed CI-1 a bundle (13 wax like envelope folds) of suspected heroin.  CI-1 exited the vehicle and walked back to the prearranged location to meet with members of the ATF New Haven field office.  The suspected heroin was placed into ATF custody and CI-1 was searched and found to be free of any contraband or unaccounted for money.

15.    **On April 5, 2017**, CI-1 was utilized to purchase approximately 3.2 grams of suspected heroin from ERKERD.  On that same date, CI-1 met with members of the ATF New Haven field office and contacted ERKERD on the Target Telephone regarding the purchase of heroin.  ERKERD directed CI-1 to the area of Thompson St in New Haven to complete the transaction.  CI-1 was searched and found to be free of any contraband or unaccounted for currency.  CI-1 was outfitted with an audio/video recorder and an audio transmitter then transported by members of the ATF New Haven field office to the area of Thompson St.  CI-1 was surveilled as he/she waited for ERKERD to arrive.  A short time later, ERKERD arrived with another individual in a black Honda vehicle bearing a Connecticut license plate with the

5

registration AF15970.  CI-1 approached the passenger-side door and received 3.2 grams of

suspected heroin from ERKERD (who was sitting in the front-passenger seat) in exchange for

the $100.00 in recorded ATF Agent cashier funds.  CI-1 walked back to the prearranged location

to meet with members of the ATF New Haven field office.  The suspected heroin was placed into

ATF custody and CI-1 was searched and found to be free of any contraband or unaccounted for

money.  After reviewing the audio/video recording, ERKERD was identified by members of the

ATF New Haven field office as the individual sitting in the front passenger seat of the vehicle.

     16.    **On April 12, 2017,** CI-1 was utilized to facilitate a deal to purchase heroin from

ERKERD.  On that same date, CI-1 met with members of the ATF New Haven field office and

contacted ERKERD on the Target Telephone regarding the purchase of heroin.  ERKERD

directed CI-1 to Pine St in Hamden to complete the transaction.  CI-1 was searched and found to

be free of any contraband or unaccounted for currency.  CI-1 was outfitted with an audio/video

recorder and an audio transmitter then transported by members of the ATF New Haven field

office to the meeting location.  While CI-1 was being transported to the aforementioned area,

C1-1 called the Target Telephone to let ERKERD know he/she was on his/her way.  ERKERD

answered the call and changed the meeting location to Ivy St in New Haven.  CI-1 was

transported to the new location, however after ERKERD attempted to change the location again,

the operation was called-off by the ATF New Haven field office.

     17.    Thus far, members of the ATF New Haven field office have been unable to locate

the location(s) where ERKERD is storing and packaging his narcotics.  Law enforcement has

also been unable to determine ERKERD's source(s) for the narcotics and whether he is working

alone or with others.

## III. Information Requested

18. In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

19. Based on my training and experience, I know that Verizon Wireless can collect E-911 Phase II data about the location of the Target Telephone, including by initiating a signal to determine the location of the Target Telephone on Verizon Wireless's network or with such other reference points as may be reasonably available.

20. Based on my training and experience, I know that Verizon Wireless can collect cell-site data about the Target Telephone.

21.     Moreover, based upon my training and experience and speaking with other law enforcement officers and agents, I know that persons who traffic in illegal narcotics often facilitate their criminal activity by the use of cellular telephones.  Drug traffickers often store the phone numbers of their customers, associates or their sources of illegal narcotics within the electronic memory of their phones, including in contact lists, address lists, recent call lists and electronic calendars.  Drug traffickers are constantly on the move throughout the day and by keeping their cell phones on their person, they can stay in frequent communication with their drug trafficking associates so as to keep track of their associates' whereabouts if a drug transaction is planned and imminent.  When expecting a supply of narcotics, traffickers will use cell phones to stay in communication with their source of supply to facilitate the drug transaction.   Likewise, when expecting to sell narcotics to a customer, traffickers will use cell phones to stay in communication with their customers.

22.     Here, I believe that when ERKERD meets with his sources and/or other customers/associates to conduct drug transactions, it is likely that he will have his cellular phone with him so as to stay in contact with his drug trafficking associates and to coordinate the transaction and meetings.

### IV.  Authorization Request

23.     The use of a pen register trap and trace device is necessary to assist in determining who is contacting ERKERD and who ERKERD is contacting, and, further,  will assist in the identification and location of other co-conspirators and sources of supply.

24.     Based upon the foregoing, there is also probable cause to believe that the requested Location Information will lead to evidence regarding the activities described above. Thus far, investigators are unaware of ERKERD's actual place of residence, thus making it

difficult to establish a location from which to affix surveillance and/or to determine if ERKERD is meeting with criminal associates at this location and/or traveling to and from this location when meeting with said associates. Further, investigators are unaware of one specific vehicle that ERKERD is operating, making it extremely difficult to determine ERKERD's location, including whether he is present at his residence, without the requested Location Information. In sum, the requested Location Information will help investigators: conduct physical surveillance; determine the locations of ERKERD arranging and conducting drug transactions; identify ERKERD's criminal associates; and identify where ERKERD and his associates store narcotics.

25. This affidavit thus sets forth reasonable grounds to believe that the information likely to be obtained by the installation and use of a pen-register device or process and trap-and-trace device or process on the Target Telephone is relevant to the ongoing criminal investigation described above, as required by Title 18, United States Code, Section 3123(a). In addition, this affidavit sets forth specific and articulable facts showing that there are reasonable grounds to believe the electronic communications records and/or information concerning the Target Telephone is relevant and material to the ongoing criminal investigation described above, as required by Title 18, United States Code, Section 2703(d).

26. Accordingly, it is requested that the Court authorize the installation and use of a pen-register device or process and trap-and-trace device or process on the Target Telephone pursuant to Title 18, United States Code, Section 3123(a), and the disclosure of electronic communications records and/or information concerning the Target Telephone, pursuant to Title 18, United States Code, Section 2703(d).

27. In addition, based upon the information set forth herein, there is probable cause to believe, and I do believe, that the requested Location Information will constitute or lead to

evidence of the Target Offenses.  There is probable cause to believe that such information will assist in locating the Target Telephone, will enable agents to meaningfully direct surveillance efforts, and will, correspondingly, assist in the seizure of the Target Telephone and other evidence of the Target Offenses.  Accordingly, pursuant to Federal Rule of Criminal Procedure 41 and Title 18, United States Code, Sections 2703(c)(1)(A) and 2711(3), it is requested that the Court issue a warrant and Order authorizing agents of the ATF to obtain the requested Location Information for a period of thirty (30) days.

28.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Telephone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

29.     I further request that the Court direct Verizon Wireless to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Verizon Wireless.  I also request that the Court direct Verizon Wireless to provide to

the government and ATF agents all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon Wireless services, including by initiating a signal to determine the location of the Target Telephone on Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government or ATF agents.  I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Telephone outside of daytime hours.

30.   I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, and related application and orders, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is not known to the target of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

MICHAEL SORRENTINO
ATF SPECIAL AGENT

Sworn before me this 26th day of April 2017

/s/ Sarah A. L. Merriam, USMJ

11

## ATTACHMENT A

**Property to Be Searched**

1. The cellular telephone (the Target Telephone) assigned call number **203-752-7069**, whose

   wireless service provider is Verizon Wireless.

## ATTACHMENT B

**Particular Things to be Seized**

All information about the location of the Target Telephone described in Attachment A for a period of thirty days, during all times of day and night.  "Information about the location of the Target Telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon Wireless are required to disclose the Location Information to the government.  In addition, Verizon Wireless must provide to the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon Wireless services, including by initiating a signal to determine the location of the Target Telephone on the network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government or ATF agents.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).